RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 7 / 29 / 10
BY PM

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

JOHN R. ROBINSON

versus

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY

CIVIL ACTION NO. 08-1697
JUDGE TOM STAGG

**MEMORANDUM RULING**

Before the court are briefs on the merits, a joint stipulation and the administrative record in the above-captioned case. See Record Documents 15-16 and 18-19. The parties have agreed to submit the record for a decision on the merits. For the reasons set forth below, all claims made by John R. Robinson ("Robinson") against Hartford Life and Accident Insurance Company ("Hartford") are **DISMISSED**.

**I. BACKGROUND**[1]

**A.    General History.**

Robinson was employed by CVS Pharmacy ("CVS") as a store manager for

---

[1]The facts are primarily drawn from the joint stipulation submitted by the parties and the unopposed statement of material facts submitted by Hartford. See Record Documents 15 and 18; see also Local Rule 56.2.

approximately seven years but worked for CVS for over twenty-five years, beginning as a clerk. He was promoted to assistant manager and then store manager. His job as a store manager involved standing, walking, squatting, kneeling, bending, stooping and lifting. Robinson was an eligible employee and participant in a group long-term disability insurance policy that CVS sponsored and that was issued by Hartford ("the LTD policy"). Claims for long-term disability benefits under the LTD policy were administered by Hartford and the policy provided Hartford with discretionary authority to determine eligibility for benefits and to interpret the policy. See Record Document 15 at 000022-000023.

The LTD policy provided that a participant is eligible for disability benefits if during the Elimination Period (180 days) and for the next twenty-four months thereafter, the individual suffers from an injury or sickness that causes physical or mental impairment to such a degree of severity that the participant is continuously unable to perform the material and substantial duties of his regular occupation and is not otherwise gainfully employed. This was considered the "Own Occupation" standard or period of disability. See id. at 000007. If a participant remains continuously disabled throughout the elimination period and the subsequent twenty-four month "Own Occupation" period, the individual may continue to receive long-term disability benefits, up to a maximum age of sixty-five, for as long as a

2

participant has an injury or sickness that causes physical or mental impairment to such a degree of severity that he is continuously unable to engage in any occupation for which he is otherwise or becomes qualified by education, training or experience and is otherwise not gainfully employed. This was considered the "Any Occupation" standard of disability. See id.

On February 3, 2005, while working at CVS in his capacity as store manager, Robinson was attacked by a shoplifter and, during the ensuing scuffle, injured his knee. See id. at 000125. He was diagnosed with a partial tear of the anterior cruciate ligament ("ACL") in his left knee. See id. at 000361. Robinson underwent successful arthroscopic knee surgery in May of 2005 and physical therapy from May until September of 2005. He was released to work with the following restrictions/limitations: no squatting, crawling, kneeling, stair climbing, or lifting over twenty pounds. On September 28, 2005, Robinson approached his supervisor regarding his restrictions/limitations and his supervisor stated that he would not be able to accommodate the restrictions. See id. at 000123.

Robinson applied for disability benefits and Hartford approved Robinson's claim under the "Own Occupation" standard of the LTD policy. Benefits were approved from November 19, 2005, through November 18, 2007. See id. at 000286-000287. After two years of benefits, Robinson was due to be evaluated by

3

Hartford.

Hartford obtained from Robinson's treating physician, Dr. William Webb ("Dr. Webb"), a functional assessment tool that stated that as of May 8, 2006, Robinson was capable of performing full-time work which would be primarily seated in nature, with the ability to stand and stretch as needed and which would require occasional standing and walking, use of a computer or telephone, as well as occasional lifting under ten pounds.  See id. at 000321.  Dr. Webb, however, suggested the following restrictions and limitations:  limit lifting to forty pounds, no kneeling, and limit the amount of stooping, squatting and climbing.  Dr. Webb further opined that Robinson was capable of performing light to medium work. See id.

In December of 2006, Hartford also obtained a vocational assessment from its own rehabilitation clinical case manager.  The rehabilitation clinical case manager conducted a detailed vocational assessment and analysis, including a review of Robinson's employment history and experience, education and military experience, and functional abilities based on reports and information provided by Robinson's treating physician, Dr. Webb.  See id. at 000288-000303.  The rehabilitation clinical case manager then completed a job person match using an occupational access system, which is a computerized job matching system that

cross-references an individual's qualifications profile with 12,741 occupations classified by the United States Department of Labor in the 1991 Dictionary of Occupational Titles.   The rehabilitation clinical case manager reported that Robinson had the capability of performing alternative sedentary, semi-skilled to skilled occupations and that based upon his age, level of education, work history, geographic location, level of function and predisability earnings, he could perform the following alternative occupations:   supervisor, order takers; manager, retail sales; supervisor, central supply; supervisor, terminal operations; and manager, recreation facility.   The occupations were all prevalent in Robinson's geographic area at a gainful wage.   The rehabilitation case manager issued a detailed and comprehensive vocational assessment report dated December 18, 2006.   See id.

Hartford advised Robinson by correspondence dated December 19, 2006, of the functional assessment provided by Dr. Webb and the vocational assessment. Hartford confirmed that benefits would be paid through the full "Own Occupation" period of disability (through November 18, 2007).   Robinson was advised that based on the medical and vocational documentation in the file, his claim would end November 18, 2007.   See id. at 000286.   Robinson was further advised that if new medical or vocational information developed which affected the results of Hartford's assessments, he should forward the information to Hartford prior to the

5

end of the "Own Occupation" period.  See id. at 000286-000287.

As the end of the "Own Occupation" period was getting closer, Hartford obtained updated medical information and records to determine whether or not Robinson qualified for continued disability benefits under the "Any Occupation" standard or if, instead, there had been no change from the prior reports of Robinson's functional capabilities in the prior vocational assessment. As part of its review, Hartford obtained a report from Dr. Clinton G. McAlister ("Dr. McAlister"), an orthopedic surgeon.[2]  See id. at 000220-000228.  Dr. McAlister's examination of Robinson included a review of Robinson's medical records from prior treating physicians, including Dr. Webb.  Additionally, Dr. McAlister conducted range of motion testing and a comprehensive physical examination.

In his July 26, 2007, report, Dr. McAlister opined that Robinson could perform at sedentary to light duty activity levels.  With regard to lifting, Robinson could not lift more than twenty pounds, could lift up to twenty pounds occasionally and could lift up to ten pounds frequently.  Dr. McAlister further opined that Robinson should be limited in the amount of time that he had to walk or stand and he should be allowed frequent changes in position.  Dr. McAlister also reported that

---

[2]Robinson had been referred for physical examination by the Social Security Administration ("SSA").  He was examined by Dr. McAlister pursuant to that referral on July 26, 2007.  See id. at 000218.

there were no limitations on Robinson's upper extremities and provided an overall good prognosis for Robinson.

By correspondence dated October 9, 2007, Hartford informed Robinson that it had conducted an updated review in order to determine whether or not he qualified for benefits under the "Any Occupation" standard of disability under the LTD policy. See id. at 000217-000219. In the correspondence, Hartford informed Robinson that benefits under the "Any Occupation" standard would not be payable. Hartford cited to the specific terms and conditions of the LTD policy and provided a summary of the medical records and information that Hartford reviewed in its evaluation of the claim.

Hartford also addressed specific occupations which Robinson would be capable of performing based on his qualifications, experience, training and work history and based on his functional abilities as reported by Dr. Webb and Dr. McAlister. Hartford concluded that, based on all of the information presented and reviewed, Robinson did not qualify for continued long-term disability benefits under the "Any Occupation" standard of disability. Hartford advised Robinson of his rights under the Employee Retirement Income Security Act ("ERISA") and his right to appeal. Specifically, Robinson was advised that Hartford would review any additional information provided on appeal and that his entire claim would be

reviewed again in the event of an appeal. See id. at 000217-000219.

In January of 2008, Robinson appealed Hartford's claim decision. The appeal was comprised of a two-page, handwritten note. The note did not contain any new or additional medical information but did state that Robinson had "continued to deteriorate and the pain ha[d] seemed to move into [his] left hip." See id. at 000179. In essence, Robinson disagreed with Hartford's claim decision. See id. at 000179-000181. Upon receipt of the appeal, the matter was referred to Hartford's appeal unit for review by one of Hartford's appeal specialists. Robinson was advised that the appeal would be reviewed within the time limits provided by ERISA. See id. at 000178.

After conducting a review of Robinson's appeal, Hartford's appeal unit affirmed the prior claim decision and found that based on the totality of the information presented, including a review of Robinson's medical records, the vocational assessment, the medical reports and opinions, information contained in the administrative record, and the applicable provisions of the LTD policy, Robinson was not entitled to benefits under the "Any Occupation" standard. See id. at 000173-000175. In rendering its final appeal decision, Hartford relied upon the following facts and determinations: (1) Dr. McAlister's physical examination and medical evaluation of Robinson, as directed by the SSA, on July 26, 2007; (2)

Dr. McAlister's opinion that Robinson could perform at a sedentary to light duty activity level with no lifting over twenty pounds occasionally and ten pounds frequently, that Robinson would only be limited in the amount of time he had to walk or stand and should be allowed frequent changes in position and that there were no limitations in Robinson's upper extremities; (3) a telephone interview conducted by Hartford with Robinson on July 27, 2007, wherein Robinson reported that he had not seen his treating physician, Dr. Webb, since reaching maximum medical improvement as reported by Dr. Webb in his May 8, 2006, functional assessment tool report, that he had not been treated by any other physicians, and that Dr. McAlister was the first physician that he had seen since treating with Dr. Webb; and (4) the medical information that did not support total disability from performing any occupation, and the findings of the vocational assessment that specifically identified alternative occupations for which Robinson was qualified based on his education, training, experience, work history and functional abilities. See id. at 000173-000175. Robinson was advised that Hartford's February 10, 2008, decision was final and that the appeal was closed.

Robinson then filed suit seeking a review of Hartford's decision to deny his claim for long-term disability benefits under the "Any Occupation" standard of disability under the LTD policy in the First Judicial District Court in and for Caddo

Parish, Louisiana. See Record Document 1. He asserted that Hartford "arbitrary and capriciously terminated" his long-term disability benefits. Id., Petition at 2. Robinson also alleged that Hartford "erred in its calculations for the disability benefits it paid to [him], before it arbitrarily and capriciously terminated those benefits." Id. Hartford removed the action to this court, alleging that Robinson's claims related to a benefit plan as defined by ERISA. See id. Thereafter, the parties filed a joint stipulation of facts and stipulated to the submission of the case for decision on the administrative record and plan documents. See Record Documents 15-16 and 18-19.

## II. ANALYSIS

**A.   Standard Of Review Under ERISA.**

ERISA authorizes a civil action by a participant "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). The standard of review in an ERISA case is governed by the language of the plan at issue. Generally, a denial of benefits under an ERISA plan is reviewed under a de novo standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989). The court applies an abuse of discretion standard, however, when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115,

109 S. Ct. at 956-57. As mentioned, the LTD policy provided that Hartford was the administrator of the policy and had discretionary authority to determine eligibility for benefits; thus, the abuse of discretion standard applies. See Record Document 15 at 000022-000023. In addition, regardless of the administrator's ultimate authority to determine benefit eligibility, factual determinations made by the administrator during the course of a benefits review should be reviewed for an abuse of discretion. See Chacko v. Sabre, Inc., 473 F.3d 604, 609-10 (5th Cir. 2006); McCall v. Burlington N./Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000).

In Metropolitan Life Insurance Company v. Glenn, 554 U.S. 105, ---, 128 S. Ct. 2343, 2350 (2008), the Supreme Court stated that a structural conflict of interest created by the plan administrator's dual role in making benefits determinations and funding the benefit plan "should be taken into account on judicial review of a discretionary benefit determination." (quotations and citation omitted). "If the administrator has a conflict of interest, [the court should] weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning [the court should] take account of several different considerations of which conflict of interest is one." Holland v. Int'l Paper Co. Ret. Plan, 576 F.3d 240, 247 (5th Cir. 2009) (internal quotations omitted). The weight that this conflict will have relative to other factors changes, however, depending on

the circumstances of a particular case.  See Glenn at ---, 128 S. Ct. at 2350-51.[3]  If

claimants do not present evidence of the degree of the conflict, the court will

generally find that any conflict is "not a significant factor."  Holland, 576 F.3d at

249 (finding that where claimant "adduced no evidence . . . that [administrator's

structural] conflict affected its benefits decision or that it had a history of abuses of

discretion," any conflict was insignificant in abuse of discretion analysis).

    Robinson has not pointed to any specific evidence of a history of abuses of

discretion or of how Hartford's structural conflict of interest may have affected its

benefits decision in this particular case.  Therefore, to the extent that Hartford's dual

role as both insurer and plan administrator may create a conflict, that conflict is not

---

[3]The Glenn court noted that a conflict of interest

> should prove more important (perhaps of great importance) where
> circumstances suggest a higher likelihood that it affected the benefits
> decision, including, but not limited to, cases where an insurance
> company administrator has a history of biased claims administration. It
> should prove less important (perhaps to the vanishing point) where the
> administrator has taken active steps to reduce potential bias and to
> promote accuracy, for example, by walling off claims administrators
> from those interested in firm finances, or by imposing management
> checks that penalize inaccurate decisionmaking irrespective of whom
> the inaccuracy benefits.

Id. at ---, 128 S. Ct. at 2351.

a significant factor that would justify a change in the standard of review.[4]

## B.    Policy Provisions.

In the section of the policy entitled "Long Term Disability Benefits," the

policy defines disability as follows: "Disability or Disabled means that You satisfy

---

[4]The court is cognizant of the Fifth Circuit's statement in Schexnayder v. Hartford Life & Accident Insurance Company, 600 F.3d 465, 471 (5th Cir. 2010), that failure to address a contrary SSA award can suggest "procedural unreasonableness" in a plan administrator's decision and that this procedural unreasonableness may justify "the court in giving more weight to the conflict." Id. at 471 (citing Glenn, 554 U.S. at ---, 128 S. Ct. at 2352). In the instant case, the SSA determined that Robinson was totally disabled, but Hartford did not address the SSA award in any of its denial letters.

Because Hartford failed to acknowledge an agency determination that was in direct conflict with its own determination, its decision *could* be construed as procedurally unreasonable. However, Hartford was not required to give any particular weight to the contrary findings. See Horton v. Prudential Ins. Co. of Am., 51 App'x 928, (5th Cir. 2002). In the case of Schexnayder, it was the "lack of *any* acknowledgment which [led the Fifth Circuit] to conclude that Hartford's decision was procedurally unreasonable and suggest[ed] that it failed to consider all relevant evidence." Id. at 471 n.3. The procedural unreasonableness in Glenn "justifie[d] the court in giving more weight to [Hartford's] conflict." Id. (citing Glenn, 554 U.S. at ---, 128 S. Ct. at 2352).

However, the instant case is distinguishable from Glenn. The only information in the record regarding the SSA award is a one-page award notice and summary and a notice of award letter from the SSA. See Record Document 15 at 000197-000198. There is nothing in the record detailing the basis and reasoning for the SSA's determination of disability. Thus, there was no way for Hartford to even begin to compare the SSA's determination of disability with the information Hartford had before it. In addition, Robinson has not shown that the definition of "disability" employed by the SSA is the same, or even similar to, the definition contained within the LTD policy at issue.

13

the Occupation Qualifier or the Earnings Qualifier as defined below."[5]  Record

Document 15 at 000007.  "Occupation Qualifier" is then defined:

> Disability means that during the Elimination Period and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
>
> > 1) continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and
> >
> > 2) not Gainfully Employed.
>
> After the LTD Monthly Benefit has been payable for 24 months, Disability means that Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
>
> > 1) continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and
> >
> > 2) not Gainfully Employed.

Id. (emphasis removed).

## C.   Analysis Of Robinson's Claims.

Hartford's decision that Robinson did not satisfy the "Any Occupation"

qualifier and, thus, was not disabled was a factual determination. See Meditrust Fin.

Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 214 (5th Cir. 1999).  Hartford

determined that Robinson would not qualify for benefits under the "Any

---

[5]The applicability of the "Earnings Qualifier" is not at issue in this case.

Occupation" standard (as that term was defined by the policy) in October of 2007.

The factual determination was supported by the following concrete evidence

contained in the administrative record at that time:

> --The change in the requirement of the "Occupation Qualifier" from "Your Regular Occupation" to "Any Occupation" that occurred after twenty-four months of disability benefits.
>
> --Medical information submitted by Dr. Webb including the functional assessment tool and his conclusion that Robinson could perform light to medium work.
>
> --The detailed vocational assessment that concluded that Robinson could perform the alternative occupations of supervisor, order takers; manager, retail sales; supervisor, central supply; supervisor, terminal operations; and manager, recreation facility.
>
> --Medical information submitted by Dr. McAlister including his conclusion that  Robinson could perform at sedentary to light duty activity levels.

Record Document 15 at 000217-000219 and 000286-000287.

As previously stated, a plan administrator's factual determinations are

reviewed for an abuse of discretion. See Chacko, 473 F.3d at 610; Meditrust Fin.

Servs. Corp., 168 F.3d at 213.  In the ERISA context, abuse of discretion review is

synonymous with arbitrary and capricious review.  See Lain v. UNUM Life Ins. Co.

of Am., 279 F.3d 337, 342 (5th Cir. 2002).   When reviewing for arbitrary and

capricious actions resulting in an abuse of discretion, the court should affirm an administrator's decision if it is supported by substantial evidence. See Meditrust Fin. Servs. Corp., 168 F.3d at 215. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2004) (quotations and citation omitted). A "decision is arbitrary when it is made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.'" Jenkins v. Cleco Power, 487 F.3d 309, 314 (5th Cir. 2007) (citing Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich., 97 F.3d 822, 828 (5th Cir. 1996)). The Fifth Circuit has instructed that this court should "only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness--even if on the low end." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999) (en banc).[6] Even if Robinson's claim is supported by record evidence (which

_____

[6]Glenn abrogated Vega to the extent that Vega adopted a "sliding-scale" methodology of evaluating conflicts of interest. See McDonald v. Hartford Life Group Ins., 361 F. App'x 599, 606 n.7 (5th Cir. 2010) (citing Holland v. Int'l Paper Co. Ret. Plan, 576 F.3d 240, 247 n.3 (5th Cir. 2009)). However, the Fifth Circuit has stated that "much of [the] 'sliding scale' precedent is compatible with the Supreme Court's newly clarified 'factor' methodology, and Glenn does not supercede that precedent to the extent it reflects the use of a conflict as a factor that would alter the relative weight of other factors." Holland, 576 F.3d at 247 n.3. Therefore, Vega continues to be good law for propositions unrelated to the "sliding scale" method of

it is not), this court must defer to Hartford's decision if the denial is also supported by substantial evidence. See Ellis, 394 F.3d at 273 (wherein the Fifth Circuit stated that it was "aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance").

In evaluating whether a plan administrator abused its discretion in making a factual determination, a district court may only consider the evidence that was available to the time of the decision. See Southern Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 102 (5th Cir. 1993); Meditrust Fin. Servs. Corp., 168 F.3d at 214. Evidence which was not a part of the administrative record cannot be admitted in the district court to resolve a factual issue which the administrator relied upon when resolving the merits of the claim. See Vega, 188 F.3d at 289. As the Fifth Circuit clarified:

> [A] district court must inquire only whether the record adequately supports the administrator's decision; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim [w]ithout some concrete evidence in the administrative record.

Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 333 (5th Cir. 2001)

---

reviewing conflicts of interest. See McDonald, 361 F. App'x at 606 n.7.

(quotations and citation omitted). Based upon the facts in the administrative record, the court finds that there was a "rational connection" between the known facts and the decision, and that Hartford's initial determination to deny benefits under the "Any Occupation" standard was reasonable. Hartford's decision was also supported by substantial evidence in the record.

Robinson appealed Hartford's initial determination by submitting a two-page note to Hartford essentially disagreeing with Hartford's determination. See Record Document 15 at 000179-000180.  Hartford reviewed Robinson's complete file in its entirety without deference to prior reviews and reached the same conclusion--that Robinson no longer met the definition of "disabled" under the "Any Occupation" standard of the Plan. See id. at 000173-000174.

Hartford's decision to uphold the denial of long-term disability benefits is supported by the following additional concrete evidence contained in the administrative record:

> --The telephone interview conducted with Robinson on July 27, wherein Robinson indicated that he had not seen Dr. Webb since he had reached maximum medical improvement because there was nothing more that could be done for him and had not treated with another physician until requested to do so by the SSA.

Id. at 000173.  The letter sent by Hartford to Robinson upholding the denial of

18

benefits also again referenced Dr. McAlister's conclusion that Robinson could perform at sedentary to light duty activity levels and the rehabilitation clinical case manager's results that revealed sedentary occupations that Robinson could perform based upon his age, level of education, work history, geographic location, level of function and predisability earnings.  See id. at 000173-000174.

Based on this information contained in the administrative record, the court finds that there was a "rational connection" between the available information and Hartford's decision on appeal, and that Hartford's determination on appeal was reasonable.  When Hartford reached its final decision, it had consistent reports from the reviewing physicians indicating that Robinson could perform at least at a sedentary to light duty activity level. Hartford's decision to deny benefits has clear support in the administrative record and the decision is rationally related to the evidence Hartford had before it at the time of the decision.

Applying the standards discussed above to the administrative record, the court concludes that Hartford did not abuse its discretion in denying Robinson's claim. Hartford's determination is consistent with a correct interpretation of the LTD policy and a reasonable determination of the facts based on the administrative record.  Even had it been necessary to consider the conflict of interest as a minimal factor (or more than a minimal factor), the evidence is more than sufficient to

support the plan administrator's exercise of its discretion.  See Dutka ex rel. Estate of T.M. v. AIG Life Ins. Co., 473 F.3d 210, 213 n. 6 (5th Cir. 2009) ("[I]n light of the evidence supporting the plan administrator's decision, the conflict of interest is not a 'tiebreaking' factor.").

**D.    Benefits Calculations.**

Robinson also complains that the benefits he did receive from Hartford were incorrectly calculated.  However, this claim is time-barred for failure to exhaust administrative remedies.

"A claimant who is denied benefits under an ERISA plan must exhaust all administrative remedies afforded by the plan before instituting litigation for recovery of benefits." Lacy v. Fulbright & Jaworski, Ltd. Liab. P'ship Long Term Disability Plan, 405 F.3d 254, 256 (5th Cir. 2005).  This requirement serves many purposes, including "(1) uphold[ing] Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provid[ing] a sufficiently clear record of administrative action if litigation should ensue; and" (3) avoiding de novo review by the federal courts.  Denton v. First Nat'l Bank of Waco, 765 F.2d 1295, 1300 (5th Cir. 1985).

The administrative record reveals that Robinson did not challenge Hartford's benefits calculations and payments at any time prior to Hartford's final appeal decision of February 18, 2008.  On August 7, 2008, Robinson, through counsel, submitted a

letter to Hartford requesting an explanation of the benefits calculation, the worker's compensation offset, and whether or not the SSA award had been considered. See Record Document 15 at 000159. He enclosed summary employment information from CVS as of September of 2004. See id. at 000160-000161. Hartford responded with correspondence dated September 2, 2008, explaining its benefits calculations. See id. at 000157-000158. Robinson took no further action to appeal or challenge Hartford's explanation or to present any additional information. As Robinson has not shown that he exhausted his administrative remedies, this claim must be dismissed.

## III. CONCLUSION

For the reasons stated above, this court finds that Hartford's decision denying benefits does not constitute an abuse of discretion and there is more than adequate support contained in the administrative record to support a denial of benefits in this case. In addition, Robinson cannot contest his benefits calculation because he did not exhaust his administrative remedies. Accordingly, Robinson's claims against Hartford are dismissed with prejudice.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 29th day of July, 2010.

_____

JUDGE TOM STAGG